IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:13-cv-732-JDB[1] |
| U.S. DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE, et al. | ) ) ) ) | |
| Defendants. | ) ) | |

**POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS ACTION NO. 13-1276**

## CONTENTS

I. OVERVIEW ............................................................................................................. 1

II. BACKGROUND ..................................................................................................... 3

   A. **Regulatory Framework** ............................................................................. 3

   B. **Plaintiffs' Allegations** ................................................................................ 5

III. ARGUMENT .......................................................................................................... 8

   A. **Plaintiffs Have the "Difficult" Burden of Establishing Standing to Litigate Others' Tax Liabilities** ................................................................................. 9

   B. **The Rulemaking Petition Does Not Confer Standing** ........................... 10

   C. **Plaintiffs Have Not Established Their Article III Standing** ................ 11

      *1. Plaintiffs Have Not Alleged an Injury in Fact* ............................... 12

         i. Plaintiffs Do Not Allege a Cognizable Informational Injury .................... 12

         ii. Plaintiff Van Hollen Has Not Alleged a Cognizable Competitive Injury ........... 15

      *2. Plaintiffs Have Not Shown Causation and Redressability* ......................... 18

   D. **Plaintiffs Lack Prudential Standing** ....................................................... 21

IV. CONCLUSION ...................................................................................................... 24

---

[1] Consolidated with action no. 13-cv-1276 (JDB) <u>Van Hollen, et al. v. Internal Revenue Service & Department of the Treasury.</u>

# AUTHORITIES

*Asterisked authorities are those on which Defendants chiefly rely.*

**Constitutional Provisions**
\* U.S. Const. Art. III ................................................................................................ passim


**Statutes**
5 U.S.C. § 553(e) ................................................................................................... 10
\* 5 U.S.C. § 702 ...................................................................................................... 21
26 U.S.C. § 501(b) .................................................................................................. 3
26 U.S.C. § 501(c)(3) ......................................................................................... 4, 20
26 U.S.C. § 501(c)(4) ...................................................................................... passim
26 U.S.C. §§ 511-515 ............................................................................................. 3
\* 26 U.S.C. § 527 ............................................................................................. passim
\* 26 U.S.C. § 6103 ................................................................................................ 13
\* 26 U.S.C. § 6104 ................................................................................................ 14
26 U.S.C. § 7401 ................................................................................................... 23
\* 26 U.S.C. § 7801(a)(1) ........................................................................................ 22


**Procedural Rules**
Fed. R. Civ. P. 12(b) ............................................................................................... 9

**Cases**
Am. Soc. of Travel Agents, Inc. v. Blumenthal, 566 F.2d 145 (D.C. Cir. 1977) .................. 15, 16
\* Am. Sports Council v. United States Dep't of Educ.,850 F. Supp. 2d 288 (D.D.C. 2012) ........... 10
\* Animal Legal Defense Fund, Inc. v. Espy, 23 F.3d 496 (D.C. Cir. 1994) .................................. 13
\* ASPCA v. Feld Entm't, Inc., 659 F.3d 13 (D.C. Cir. 2011) ................................................. 13, 15
\* Ass'n of Am. Physicians & Surgs., Inc. v. FDA, 539 F. Supp. 2d 4 (D.C. Cir. 2008) .................. 8
\* Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150 (1970) ................................ 15
Bennett v. Spear, 520 U.S. 154 (1997) ..................................................................................... 8, 19
\* Chiron Corp. v. NTSB, 198 F.3d 935 (D.C. Cir. 1999) ............................................................... 13
\* City of Orrville v. FERC, 147 F.3d 979 (D.C. Cir. 1998) ............................................................ 11
\* Clapper v. Amnesty Int'l USA, --- U.S. ---, 133 S. Ct. 1138 (2013) ............................................. 9
DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006) ................................................................ 10
FEC v. Akins, 524 U.S. 11 (1998) ............................................................................................... 13
\* Fulani v. Brady, 935 F.2d 1324 (D.C. Cir. 1991) .......................................................... 17, 18, 23
\* Fund Democracy, LLC v. SEC, 278 F.3d 21 (D.C. Cir. 2002) ............................................ 10, 11
\* Gettman v. DEA, 290 F.3d 430 (D.C. Cir. 2003) ............................................................ 8, 10, 11
\* Gottlieb v. FEC, 143 F.3d 618 (D.C. Cir. 1998) ....................................................... 16, 17, 18
Grocery Mfrs. Ass'n v. EPA, 693 F.3d 169 (D.C. Cir. 2012) ...................................................... 21

Hydro Investors, Inc. v. FERC, 351 F.3d 1192 (D.C. Cir. 2003) ................................................. 10

In re United States Cath. Conference, 885 F.2d 1020 (2d Cir. 1989).................................... 17, 18

* Int'l Primate Protection League v. Inst. for Behavioral Research,799 F.2d 934 & n.4 (4th Cir. 1986) .............................................................................................................................. 22

Lewis v. Schafer, 571 F. Supp.2d 54 (D.D.C. 2008) .................................................................. 10

* Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ................................................... 8, 9, 11, 12

* Nat'l Fed'n of Fed. Employees v. Cheney, 883 F.2d 1038 (D.C. Cir. 1989) .............................. 21

* Nat'l Taxpayers Union v. United States, 68 F.3d 1428 (D.C. Cir. 1995) ..................................... 9

* NCUA v. First Nat'l Bank & Trust Co., 522 U.S. 479 (1998)..................................................... 21

Sea Shore Corp. v. Sullivan, 158 F.3d 51 (1st Cir. 1998) ......................................................... 10

* Shays v. FEC, 414 F.3d 76 (D.C. Cir. 2005) ...................................................................... 15, 16

* Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976) ............................................ 19, 20, 21

* Twp. of Lyndhurst v. Priceline.com Inc., 657 F.3d 148 (3d Cir. 2011) ...................................... 23

United States v. AVX Corp., 962 F.2d 108 (1st Cir. 1992)......................................................... 10

* Wertheimer v. FEC, 268 F.3d 1070 (D.C. Cir. 2001).............................................................. 13

Women's Equity Action League v. Cavazos, 879 F.2d 880 (D.C. Cir. 1989) ............................... 9


**Administrative Materials**

26 C.F.R. § 501(c)(4)-1........................................................................................... passim

Internal Revenue Service, Charting A Path Forward: Initial Assessment and Plan of Action. June 24, 2013 (Ex. A to Complaint)................................................................................ passim

# I. OVERVIEW

We  have moved to dismiss suit no. 13-1276,[2] in which plaintiffs Chris Van

Hollen, Democracy 21, Campaign Legal Center, and Public Citizen Litigation

Group seek to remedy an alleged "[f]ailure to Enforce IRC Section 501(c)(4)" by

the Internal Revenue Service [the "Service"]. (Compl. at 7.)  Plaintiffs challenge

the Treasury Regulation that explains the criteria for exemption from federal

income tax for groups meeting specified criteria under Internal Revenue Code

section 501(c)(4), 26 U.S.C. § 501(c)(4).  Plaintiffs assert that the regulation

wrongly allows groups to claim a tax exemption despite intervening in political

campaigns, as long as such intervention is not the groups' primary activity.   In

addition to this general challenge, Democracy 21 and Campaign Legal Center

seek review of the Service's alleged inaction on their petition asking it to amend

the regulation.  Plaintiffs also challenge a recent directive to Service employees

providing an expedited process for certain backlogged applications seeking a

ruling that an entity qualifies for tax exemption under section 501(c)(4).   They

claim that the directive, like the regulation, is not an appropriate interpretation of

the statute. They seek a declaration that the Service arbitrarily and capriciously

---

[2] We have separately moved to dismiss consolidated suit no. 13-732, <u>Citizens for
Responsibility and Ethics in Washington v.  Internal Revenue Service</u>.

failed to initiate rulemaking that would make these groups ineligible for a tax exemption if they intervene in political campaigns, an injunction requiring it to do so, and a declaration that the recent directive was arbitrary and capricious.

Plaintiffs lack standing.  Their complaint, in essence, challenges the tax exempt status of others, but it is well-established that taxpayers lack standing to litigate others' taxable status. [3]  Submitting a petition for rulemaking, as some plaintiffs have done, does not in itself serve as a basis for standing, and Plaintiffs' allegations do not establish their constitutional and prudential standing to sue. They lack constitutional standing since they have not alleged a cognizable injury fairly traceable to the agency action at issue and redressable by a favorable ruling.   Furthermore, they lack prudential standing to sue to impose tax on others because the Internal Revenue Code vests exclusive enforcement authority in the Executive Branch.  The Court should thus dismiss this suit for lack of subject matter jurisdiction.

---

[3] We also contest Plaintiffs' assertions that the Service has taken no action on their petition and that its treatment of the petition was arbitrary or capricious, particularly given the deferential standard of review that applies, see Am. Sports Council v. United States Dep't of Educ., 850 F. Supp. 2d 288, 296 (D.D.C. 2012). Further, we contend that Van Hollen and Public Citizen Litigation Group have not exhausted administrative remedies.  Since Plaintiffs lack standing, we do not address these issues any further here, but reserve our right to do so should the Court hold, contrary to our contention, that they have standing to sue.

## II. Background

### A. Regulatory Framework

The statute at issue in this litigation, section 501(c)(4), is one of a number of Code provisions that generally exempt organizations from federal income tax if they meet certain criteria.[4]  Many of these provisions are contained in subsection (c) of section 501, which includes over twenty subsections that provide alternative bases for claiming an exemption from tax.  One such provision, section 501(c)(4), exempts nonprofit organizations "operated exclusively for the promotion of social welfare" from income tax.

The regulation at issue, Treas. Reg. § 1.501(c)(4)-1, 26 C.F.R. § 1.501(c)(4)-1, interprets this language to mean that "[a]n organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way that common good and general welfare of the people of the community.  An organization embraced within this section is one which is operated primarily for the purpose of bringing about civic betterments and social

---

[4] The exemption is not absolute. For example, such groups must pay tax on income from an "unrelated trade or business," 26 U.S.C. §§ 501(b); 511-515. Further, if they influence or attempt to influence the election of an individual to public office or other similar activities, they are taxed on the lesser of their net investment income or political expenditures. Id. § 527(f)(1).

improvements."   26 C.F.R. § 501(c)(4)-1(a)(2)(i).  Although the statute's language does not expressly refer to political activity,[5] the regulation states that "[t]he promotion of social welfare does not include direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office."  Id. § 501(c)(4)-1(a)(2)(ii).  Thus, under the regulation, some groups that participate in political activities might qualify for a tax exemption under section 501(c)(4), but only if they primarily engage in other activities that promote social welfare as defined by the regulation.[6]

The directive that Plaintiffs seek to invalidate provides an expedited process for certain backlogged applications for a formal determination of tax exempt status under section 501(c)(4), and was announced in a June 24, 2013 report attached to Plaintiffs' complaint. (Compl. ¶ 45, Ex. A at 24-25).  The report explained that directive applies to a subset of applications that had been pending for over 120 days.  It instructs employees processing these applications to issue a

---

[5] The text of section 501(c)(4) thus differs from the text of the section 501(c)(3) exemption for charitable organizations, which expressly conditions tax-exempt status on the additional criterion that the organization "does not participate in, or intervene in . . . any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 501(c)(3).

[6] Note, however, that by participating in political activities, even groups exempted under the regulation may have to pay tax on their net investment income up to the amount of their political spending. 26 U.S.C. § 527(f)(1).

favorable determination if, <u>inter alia</u>, the applicant certifies that it spends less than 40% of its time and expenditures on political campaign activity. <u>Id.</u>

## B. Plaintiffs' Allegations

Plaintiffs contend that the Service has "not enforced" section 501(c)(4)'s exemption criteria because the regulation and the recent directive permit organizations that intervene in political campaigns to claim tax-exempt status under section 501(c)(4). (Compl. ¶¶ 18-20.) Plaintiffs do not contend that their own taxable status is at issue. Instead, the four plaintiffs make several different assertions concerning their purported interest in the issue. Their claims about how the agency rules at issue affect them are conclusory and speculative.

First, Democracy 21 and Campaign Legal Center challenge the Service's response to a petition they submitted in July 2011, asking that it amend the regulation so that groups spending "more than an insubstantial amount" on political campaigns would be ineligible for a tax exemption under section 501(c)(4). (Compl. ¶ 32, Ex. B ¶ 6.) They claim that the Service did not take "prompt action" in response, and that a year later, in response to a subsequent letter, the Service stated that it "will consider proposed changes in this area as we work . . . to identify tax issues that should be addressed through regulations and other public guidance." (Compl. ¶¶ 36, 39, Ex. D.) Plaintiffs have attached a June

5

24, 2013 report by the Service stating that the Treasury Department has agreed to add guidance on how to measure "primary activity" with respect to social welfare for section 501(c)(4) applications, including how to clarify the definition of "political campaign intervention" including political campaign activity, to its priority guidance plan. (Compl. Ex. A at 26.)

Second, all four plaintiffs claim that they cannot obtain information about contributors to organizations that help to fund political campaigns and claim a tax exemption under section 501(c)(4).  (Compl. ¶¶ 3, 48-49, 53.)  They note that the Internal Revenue Code imposes a requirement to disclose contributors to certain entities claiming a tax exemption under a different Code provision, section 527, 26 U.S.C. § 527. Id. ¶¶ 3, 31.  They speculate that if organizations could not participate in political campaigns while retaining tax exempt status under section 501(c)(4), "much of the electoral spending currently carried out by section 501(c)(4) would shift to . . . section 527 tax-exempt organizations - that are subject to donor disclosure requirements." Id. ¶ 31.

Third, Plaintiff Van Hollen claims that "organizations that are his political competitors" can gain "the advantage of tax exemption without the requirement of donor disclosure." Id. ¶ 51.  He asserts that his campaign committee and a leadership PAC that he chairs, which are not parties to the suit, are tax-exempt

6

under section 527 and must operate subject to its requirements. Id. ¶7.  He

contends that due to the regulation, groups claiming exempt status under section

501(c)(4), which does not impose a disclosure requirement, can spend money to

oppose his reelection or to oppose candidates funded by the leadership PAC. Id.

¶¶ 51-52.  He claims that these groups utilize the regulation to receive both a tax

exemption and an exemption from unspecified "disclosure obligations." Id.

Plaintiffs' assertions of adverse impact rely on assumptions regarding the

behavior of groups currently claiming tax exempt status under section 501(c)(4),

their contributors, and other parties not before the Court.  Plaintiffs do not allege

that groups claiming exempt status under the regulation would be legally barred

from participating in political campaigns or would have to disclose their donors

if they were subject to tax.  Instead, they claim in conclusory terms that if the

Service "enforce[d]" section 501(c)(4) "much of the electoral campaign spending

currently carried out by section 501(c)(4) organizations would shift to other types

of organizations" that claim exemption under section 527 and are thus subject to

its donor disclosure requirements. (Compl. ¶ 31.)  Plaintiffs do not explain why

a ruling "enforcing" their reading of section 501(c)(4) would necessarily shift

campaign spending to groups electing exemption under section 527, rather than

to taxable entities or other groups not subject to a disclosure requirement.

7

### III. ARGUMENT

Plaintiffs lack standing to litigate the tax status of other parties not before the Court.  "The question of standing involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." <u>Bennett v. Spear</u>, 520 U.S. 154, 162 (1997) (internal quotation omitted).  To have standing under U.S. Const. Art. III, a plaintiff must allege an "injury in fact . . . fairly traceable" to the defendant's conduct at issue and redressable by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).   A plaintiff must also have prudential standing, which requires, <u>inter alia</u>, that Congress intended to permit the plaintiff to sue to enforce the statute at issue, and that he sue to enforce his own legal rights and interests rather than those of others. <u>Ass'n of Am. Physicians & Surgs., Inc. v. FDA</u>, 539 F. Supp. 2d 4, 18 (D.C. Cir. 2008).  The grant of a procedural right to petition for rulemaking does not, in itself, confer standing to obtain judicial review; Plaintiffs must independently demonstrate standing.  <u>Gettman v. DEA</u>, 290 F.3d 430, 434-35 (D.C. Cir. 2003).  For the reasons below, Plaintiffs have not established their constitutional or prudential standing to bring this suit.

**A. Plaintiffs Have the "Difficult" Burden of Establishing Standing to Litigate Others' Tax Liabilities**

This Court's subject matter jurisdiction is limited to "cases" and "controversies," U.S. Const. Art. III cl. 2, an element of which is a plaintiff's standing to bring suit, <u>Defenders of Wildlife</u>, 504 U.S. at 560.  "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." <u>Clapper v. Amnesty Int'l USA</u>, --- U.S. ---, 133 S. Ct. 1138, 1146 (2013).   When "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." <u>Defenders of Wildlife</u>, 504 U.S. at 562. "It is well-recognized that the standing inquiry in tax cases is more restrictive than in other cases." <u>Nat'l Taxpayers Union v. United States</u>, 68 F.3d 1428, 1434 (D.C. Cir. 1995).  <u>See also</u> <u>Women's Equity Action League v. Cavazos</u>, 879 F.2d 880, 885 n.3 (D.C. Cir. 1989) (noting the "well-established position that, ordinarily, one may not litigate the tax liability of another.").

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of standing, the court need not accept a plaintiff's legal conclusions, <u>A.N.S.W.E.R.</u> <u>Coalition v. Salazar</u>, No. 05-71, 2013 U.S. Dist. LEXIS 5066 at *13 (D.D.C. Jan. 14,

2013), and may consider matters outside the pleadings. <u>Lewis v. Schafer</u>, 571 F.

Supp.2d 54, 57-58 (D.D.C. 2008).  While the court accepts the plaintiff's

allegations of fact, it "need not[] . . . credit 'bald assertions,' 'subjective

characterizations, optimistic predictions, or problematic suppositions.'" <u>Sea</u>

<u>Shore Corp. v. Sullivan</u>, 158 F.3d 51, 54 (1st Cir. 1998) (quoting <u>United States v.</u>

<u>AVX Corp.</u>, 962 F.2d 108, 114 (1st Cir. 1992)).  Nor do "speculative inferences"

establish standing. <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 344 (2006).

Under this standard, Plaintiffs, who are not "the object of the government action

or inaction" that they challenge, and rely on "speculative inferences" about the

effect of agency action on parties not before this Court, lack standing to sue.

### B.  The Rulemaking Petition Does Not Confer Standing

Plaintiffs claim to seek review of the Service's response to the rulemaking

petition submitted by Democracy 21 and Campaign Legal Center.  But to

establish standing, they must show more than dissatisfaction with the agency's

response. <u>Gettman v. DEA</u>, 290 F.3d 430, 433-35 (D.C. Cir. 2002). <u>See also Hydro</u>

<u>Investors, Inc. v. FERC</u>, 351 F.3d 1192, 1197 (D.C. Cir. 2003); <u>Am. Sports Council</u>

<u>v. United States Dep't of Educ.</u>, 850 F. Supp. 2d 288, 293 (D.D.C. 2012).   Although

5 U.S.C. § 553(e) allows any "interested person" to petition an agency for

rulemaking, the statute does not confer standing merely by granting such a

procedural right. <u>Gettman</u>, 290 F.3d. at 433. <u>Accord</u>, <u>Fund Democracy, LLC v.</u>

<u>SEC</u>, 278 F.3d 21, 27-28 (D.C. Cir. 2002), (grant of procedural right to any

"interested person" at the administrative level did not provide standing). <u>See</u>

<u>also</u> <u>City of Orrville v. FERC</u>, 147 F.3d 979, 985 (D.C. Cir. 1998) ("[A] party does

not acquire such a 'direct stake in a litigation' simply by participating in the

antecedent administrative proceedings . . . it must establish its constitutional and

prudential standing."). Of particular relevance here, the D.C. Circuit has held

that a plaintiff who could not demonstrate a concrete injury caused by the

agency's response to his rulemaking petition lacked standing to obtain judicial

review, even though a statute similar to section 553(e) expressly authorized the

petition. <u>Gettman</u>, 290 F.3d at 434-35.

### C.  Plaintiffs Have Not Established Their Article III Standing

To establish Article III standing, a plaintiff must allege (1) a concrete

and particularized injury to a legally protected interest or right (2) fairly

traceable to the defendant's allegedly unlawful conduct and (3) likely to be

redressed by a favorable ruling. <u>Lujan</u>, 504 U.S. at 560.  Plaintiffs assert that they

lack information on donors to groups that claim to be tax exempt under section

501(c)(4) and that  fund political campaigns, and that plaintiff Van Hollen

competes with these groups. (Compl. ¶ 3.)  They assert in a conclusory manner

that the regulation "has resulted in a flood of electoral spending by ostensible section 501(c)(4) organizations," and that without the regulation, "much of the current electoral spending currently carried out by section 501(c)(4) organizations would shift to other types of organizations . . . that are subject to donor-disclosure requirements." (Compl. at ¶¶ 3, 32.)  As discussed below, these conclusory and speculative assertions do not establish an injury in fact fairly traceable to agency action and redressable by the Court.

### 1.  *Plaintiffs Have Not Alleged an Injury in Fact*

To demonstrate a cognizable injury, a plaintiff must allege an "injury in fact" that is "concrete and particularized" and "actual or imminent." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 560.  Plaintiffs claim that they cannot obtain information on donors to groups participating in political campaigns that claim exemption under section 501(c)(4), and that plaintiff Van Hollen competes with such groups.  It appears that Plaintiffs are attempting to establish an informational and/or competitive injury, but they fail to establish either.

i.  Plaintiffs Do Not Allege a Cognizable Informational Injury

A plaintiff can show informational standing by alleging that it was denied information that must be disclosed under a "statute [that] grants a plaintiff a concrete interest" in the information. <u>Nader v. FEC</u>, No. 12-5134, 2013 U.S. App.

12

LEXIS 15932 at *6 (D.C. Cir. Aug. 2, 2013) (citing <u>FEC v. Akins</u>, 524 U.S. 11

(1998)).  The statute must have "explicitly created a right to information."

<u>Animal Legal Defense Fund, Inc. v. Espy</u>, 23 F.3d 496, 502 (D.C. Cir. 1994).   A

plaintiff must identify "statutes, regulations, or other sources of law" requiring

disclosure.  <u>Chiron Corp. v. NTSB</u>, 198 F.3d 935, 942 (D.C. Cir. 1999).  The

allegations must also demonstrate that it is "directly being deprived" of this

information. <u>Wertheimer v. FEC</u>, 268 F.3d 1070, 1074 (D.C. Cir. 2001).  <u>Accord</u>,

<u>ASPCA v. Feld Entm't, Inc.</u>, 659 F.3d 13, 22-24 (D.C. Cir. 2011).

Plaintiffs do not allege a cognizable informational injury because they cite

no statute that grants them a direct right to the information they seek: the

identity of all donors to organizations involved in electoral campaigns, including

groups that claim tax exempt status under the regulation.  Although they allege

that the Internal Revenue Code does not impose a requirement on groups

exempted from tax under section 501(c)(4) to disclose donor data, (Compl. ¶ 14,)

nowhere do they reference any Code section that would impose such a

requirement on these groups if they were instead subject to income tax.

Rather, the Code provides that tax return and taxpayer return information

is confidential and prohibits disclosure of such information except as authorized

under the Code. <u>See</u> 26 U.S.C. § 6103.   In fact, the major public disclosure

obligations imposed by the Code on private entities only apply to <u>tax-exempt</u> <u>organizations</u>. 26 U.S.C. § 6104.  Plaintiffs want access to donor information.  But they do not cite any statute that would require organizations that the regulation exempts from tax to disclose this information if they were instead subject to tax.

Instead, Plaintiffs speculate that the ability to remain tax-exempt under section 501(c)(4) while funding political campaigns "allows" groups to avoid disclosure rules governing entities who "properly claim exemption under section 527." (Compl. ¶ 3.)  But they cite no law that would require (or even generally permit) groups claiming section 501(c)(4) status under the regulation to "properly claim exemption" under section 527 in the absence of the regulation, rather than, for example, electing to remain a taxable entity not subject to any disclosure obligations under that section or another Code provision.  Section 527's disclosure rules only apply to groups that <u>affirmatively</u> elect tax-exemption under that section by giving notice to the Service, and entities cannot even make this election unless they are "organized and operated primarily" for the purpose of "accepting contributions or making expenditures" for "influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any . . . public office or office in a political organization, or the election of Presidential or Vice-Presidential electors." 26 U.S.C. § 527(e)(1)-(2),

14

(i).[7]  Thus, section 527 does not require disclosure of, nor give Plaintiffs an express right to, the identity of donors to all groups involved in political campaigns, nor is its scope directly affected by section 501(c)(4).  Since Plaintiffs have not identified a statute entitling them to this information, much less one that is directly affected by section 501(c)(4) status, they fail to allege a cognizable injury.  Cf. ASPCA, 659 F.3d at 24.

ii.    Plaintiff Van Hollen Has Not Alleged a Cognizable Competitive Injury

A plaintiff may have "competitor standing" to enforce a statute prohibiting certain activity if agency action allegedly allows his direct competitors to engage in that activity.  See, e.g., Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150 (1970); Shays v. FEC, 414 F.3d 76, 85-86 (D.C. Cir. 2005) (applying competitor standing in the electoral context).  Van Hollen does not have such standing because tax exemption statutes like section 501(c)(4), which confer a tax benefit with respect to certain activities but do not impose a legal prohibition on other acts, cannot serve as a basis competitive injury.   Am. Soc. of Travel Agents, Inc. v. Blumenthal, 566 F.2d 145, 151 (D.C. Cir. 1977).   In addition, only plaintiffs eligible for a government benefit granted to a direct competitor can assert a

---

[7] While a limited class of entities are automatically exempt under section 527, these groups are not subject to its disclosure rules. 26 U.S.C. § 527(i)(5)-(6), (j)(5).

competitive injury from the grant of such benefit, but Van Hollen is not a eligible

for the tax benefit that section 501(c)(4) grants to the "organizations" who claims

to compete against. Cf. Gottlieb v. FEC, 143 F.3d 618, 621 (D.C. Cir. 1998).  He

thus has not alleged a competitive injury.

Van Hollen claims that he "must compete on unequal terms with tax

exempt groups that are permitted to raise funds for political purposes." (Compl.

¶ 3.)   But these allegations, even if true, do not establish a competitive injury.

The agency action at issue affects taxable status, but does not determine what

competitive activity is permissible or prohibited.  Since section 501(c)(4) is merely

a tax provision that does not prohibit any activity, competitive or otherwise, it

does not provide a basis for claiming competitive injury.

Key to competitor standing is that agency action permits competitive acts

that are alleged to be prohibited by the disputed statute. See, e.g., Shays, 414 F.3d

at 82 (statute at issue "barred" and "restricted" certain activities).  Thus, the D.C.

Circuit has held that a plaintiff cannot assert a competitive injury based on tax

exemption statutes like section 501(c)(4) that grant a tax benefit if an organization

engages in certain activities, but do not make it illegal to engage in other

activities.  Blumenthal, 566 F.2d at 151 ("here, [the organizations claiming

exemption] will clearly remain free to pursue their [activities], however the tax

16

status is finally resolved.  By contrast, in <u>Data Processing</u>, if the [agency rule] had been overturned . . . the offering of data processing services by national banks would have been <u>illegal</u>") (emphasis added). <u>See also</u> <u>Fulani v. Brady</u>, 935 F.2d 1324, 1327 (D.C. Cir. 1991) ("[T]his Court specifically has rejected the assertion that '<u>Data Processing</u> should be read to endorse standing for any [person] which wishes to contest the tax treatment of a competitor'") (citing <u>Blumenthal</u>). Similarly, section 501(c)(4) grants a tax exempt status to organizations that meet its criteria, but does not prohibit participation in other activities, and thus a regulation interpreting its scope cannot cause a cognizable competitive injury.

In addition, only plaintiffs eligible for a government benefit granted to a direct competitor can assert a competitive injury from the grant of such benefit. But Van Hollen, who is an individual, does not (and cannot) assert that he would qualify for section 501(c)(4) status, and thus is not considered similarly situated to the "organizations" qualified under section 501(c)(4), a key requirement to asserting competitor standing.  A plaintiff claiming competitor standing must "'show that he personally competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit.'"  <u>Gottlieb v. FEC</u>, 143 F.3d 618, 621 (D.C. Cir. 1998) (quoting <u>In re United States Cath. Conference</u>, 885 F.2d 1020, 1029 (2d Cir. 1989)).  To make this showing with

respect to a government benefit granted to a competitor, the plaintiff must be "in a position to receive" the same benefit.  Id.  For example, a political action committee challenging the alleged misuse of government matching funds by a candidate it opposed lacked competitor standing since "[o]nly another candidate" would be eligible for such funding.  Id.

Specifically in the tax context, the D.C. Circuit has held that a political candidate challenging an organization's tax-exempt status on competitor standing grounds, who was not in a position to receive the same exemption, could not establish competitor standing.  Fulani, 935 F.2d at 1328, explained by Gottlieb, 143 F.3d at 620-21.  Van Hollen does not assert that he was eligible for or improperly denied section 501(c)(4) status, and as an individual, he would not have qualified for such status.  He thus is not similarly placed, for competitor standing purposes, to the section 501(c)(4) organizations whose exempt status he claims is responsible for his injury.  Accordingly, he has not alleged a cognizable competitive injury.

### 2.    *Plaintiffs Have Not Shown Causation and Redressability*

Plaintiffs' allegations also fail to demonstrate that they meet the causation and redressability requirements for Article III standing because they consist of speculation about the behavior of parties not before the Court.  To demonstrate

causation and redressability, Plaintiffs must show that any injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court [and] that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 167 (1997) (citing Lujan).

The causation and redressability requirements ensure that courts only "redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976). Accord, Clapper, --- U.S. at ---, 133 S. Ct. at 1141 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."). Here, the alleged harm is caused by third parties not before the Court – such as groups claiming exemption under section 501(c)(4) – and Plaintiffs' "guesswork" about how these "independent decisionmakers" might act establishes neither causation nor redressability.

Plaintiffs speculate that groups claiming exemption under section 501(c)(4) would only participate in political campaigns if they could do so while enjoying tax exempt status under section 501(c)(4). But these groups could instead chose

to forego tax-exempt status, in which case the scope of their activities need not be limited to the activities described in section 501(c)(4).

This case is thus analogous to <u>Simon</u>, in which indigent patients sought to contest the  Service's advisory ruling that hospitals that did not provide care at less than full costs to indigent patients could still qualify for exemption as a charitable organization under 26 U.S.C. § 501(c)(3).  The <u>Simon</u> plaintiffs argued that the ruling "'encouraged'" hospitals not to treat the indigent.  426 U.S. at 42.  But the Court held that "it does not follow . . . that the denial of access to hospital services in fact results from petitioners' new Ruling. . . . It is purely speculative whether the denials of service specified in the complaint fairly can be traced to petitioners' 'encouragement' or instead result from decisions made by the hospitals without regard to the tax implications." <u>Id.</u> at 43.  It would be similarly speculative to conclude that the actions of groups claiming exemption under section 501(c)(4) "can be fairly traced" to the regulation at issue here, rather than to these groups' own independent choices.  Thus, Plaintiffs have not shown that the harm they alleges is "fairly traceable" to the conduct at issue in their suit.

For the same reason, Plaintiffs have not shown redressability, <u>i.e.</u>, that "it must be 'likely,' as opposed to 'speculative,' that the injury will be 'redressed by a favorable decision.'" <u>Lujan</u>, 504 U.S. at 560-561 (citations omitted).  If the non-

20

party causing the alleged harm need not change its behavior due to a favorable

ruling, as is the case here, redressability is lacking. <u>Cf. Simon</u>, 426 U.S. at 43 ("[I]t

is just as plausible that the hospitals to which respondents may apply for service

would elect to forgo favorable tax treatment.").  Consequently, Plaintiffs would

not obtain redress for their "injury" through a favorable ruling, and they thus

lack Article III standing.

## D.    Plaintiffs Lack Prudential Standing

Besides lacking Article III standing, Plaintiffs lack prudential standing

because the Internal Revenue Code vests exclusive enforcement authority in the

Executive Branch, and thus precludes this suit seeking to remedy an alleged

"failure to enforce" the Code. (Compl. at 7.)   Courts impose prudential

limitations on their exercise of power that limit their jurisdiction. <u>Grocery Mfrs.</u>

<u>Ass'n v. EPA</u>, 693 F.3d 169, 179 (D.C. Cir. 2012).  The Administrative Procedure

Act, under which Plaintiffs assert jurisdiction, incorporates these limitations. 5

U.S.C. § 702 (right to court review limited to parties "adversely affected or

aggrieved by agency action <u>within the meaning of a relevant statute</u>.") (emphasis

added); <u>NCUA v. First Nat'l Bank & Trust Co.</u>, 522 U.S. 479, 488 (1998); <u>Nat'l</u>

<u>Fed'n of Fed. Employees v. Cheney</u>, 883 F.2d 1038, 1042 (D.C. Cir. 1989) ("Section

702 and the prudential zone of interest test are intimately related.").

21

Plaintiffs lack prudential standing because the Internal Revenue Code, which they seek to enforce against others, expressly grants exclusive enforcement authority to the Executive Branch. 26 U.S.C. § 7801(a).  A plaintiff lacks prudential standing if he "rests his claim to relief on the legal rights or interests of third parties," or if "cannot reasonably be assumed that Congress intended to permit the suit" by the plaintiff. Ass'n of Am. Physicians & Surgs., Inc. v. FDA, 539 F. Supp. 2d 4, 18 (D.C. Cir. 2008).  Provisions in a statute expressly providing for agency enforcement may thus limit others' prudential standing to sue. Animal Legal Def. Fund v. Espy, 23 F.3d 496, 503 (D.C. Cir. 1997)(citing Int'l Primate Protection League v. Inst. for Behavioral Research, 799 F.2d 934, 939 & n.4 (4th Cir. 1986)).  In light of the Code's administrative enforcement provisions, it "cannot reasonably be assumed" that Congress intended to permit a suit by Plaintiffs seeking to limit others' ability to claim an exemption from taxes owing to the government.

Congress has established a comprehensive enforcement regime relying exclusively on the Executive Branch to enforce the Code against persons who improperly seek to avoid tax, and such a regime is inconsistent with this private enforcement suit.  26 U.S.C. § 7801(a)(1) states that "[e]xcept as otherwise expressly provided by law, the administration and enforcement of this title shall

be performed by or under the supervision of the Secretary of the Treasury."  An analogous state law vesting authority to enforce the tax code in a state official was recently held to deprive cities of prudential standing to enforce a tax statute. Twp. of Lyndhurst v. Priceline.com Inc., 657 F.3d 148, 157-58 (3d Cir. 2011).

Other Code provisions also demonstrate Congress' intent to limit enforcement to the Executive Branch.  See, e.g., 26 U.S.C. § 7401 (requiring approval by the Secretary of any suit to recover taxes); Fulani v. Brady, 935 F.2d 1324, 1327 (D.C. Cir. 1991) ("[T]he statutory scheme created by Congress is inconsistent with, if not preclusive of, third party litigation of tax-exempt status."). Accord, Apache Bend Apartments Ltd. v. United States, 987 F.2d 1174, 1177 (5th Cir. 1993) (permitting private suits against the government that seek to impose tax on others "would seriously disrupt the entire revenue collection process" since, inter alia, "the affected taxpayers, who are not parties, would remain free to challenge any deficiencies asserted.").   Thus, the exclusive authority vested in the Executive Branch to enforce the Internal Revenue Code deprives Plaintiffs of prudential standing to bring this suit seeking to defeat others' claims to a tax exemption.

## IV. CONCLUSION

Plaintiffs fail to show that they have constitutional or prudential standing. The Service's response to their petition for a new rule does not, on its own, constitute a cognizable injury.  And Plaintiffs have not demonstrated that the agency action at issue impacts any concrete legal right to obtain information, or enables competition against plaintiff Van Hollen that would otherwise be illegal. Further, their allegations fail to demonstrate, beyond a speculative level, that the involvement and spending by groups who do not disclose donors in electoral campaigns is fairly traceable to the disputed agency action, or that such involvement and spending would cease as a result of a favorable ruling.  The affected organizations could simply choose to continue their electoral activity and pay tax on their income.   Lastly, Plaintiffs lack prudential standing because their suit, for all intents and purposes, seeks to enforce a provision of the Internal Revenue Code against organizations currently claiming a tax exemption, while the Code expressly vests enforcement authority in the Executive Branch.  For the foregoing reasons, Plaintiffs lacks standing, and the Court should dismiss this suit for lack of subject matter jurisdiction.

/ /

/ /

DATE: October 25, 2013

Respectfully submitted,

/s/ Yonatan Gelblum
YONATAN GELBLUM
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC  20044
Phone/Fax:  (202) 305-3136/514-6866
Email: Yonatan.Gelblum@usdoj.gov

OF COUNSEL:

RONALD C. MACHEN, JR.
United States Attorney