UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>        Plaintiff,<br><br>                v.<br><br>**U.S. DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, et al.,**<br><br>        Defendants. | Civil Action No. 13-732 (JDB) |

## MEMORANDUM OPINION

Citizens for Responsibility and Ethics in Washington ("CREW") has brought this action against the Internal Revenue Service ("IRS") and the Acting Commissioner of the IRS. Under the Administrative Procedure Act and the Internal Revenue Code ("Tax Code"), CREW challenges defendants' refusal to initiate a rulemaking procedure to address a perceived conflict between a provision of the Tax Code, 26 U.S.C. § 501(c)(4), and the IRS regulation that defines organizations entitled to a tax exemption under that provision. CREW requests that the Court declare defendants' refusal to grant CREW's rulemaking petition and to amend the IRS regulation to be arbitrary, capricious, and contrary to law; enjoin defendants from implementing the existing regulation; and issue a writ of mandamus compelling defendants to initiate a rulemaking procedure to revise the existing regulation. Presently before the Court is [9] defendants' motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on the ground that CREW lacks standing to bring this suit. Upon careful consideration of the motion and the

1

parties' memoranda,[1] the applicable law, and the entire record, and for the reasons set forth below, the Court will grant defendants' motion.

## BACKGROUND

Section 501(c)(4) of the Tax Code provides a tax exemption for organizations "not organized for profit but <u>operated exclusively</u> for the promotion of social welfare." 26 U.S.C. § 501(c)(4)(A) (emphasis added). The promotion of social welfare "does not include direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office." Treas. Reg. § 1.501(c)(4)-1(a)(2)(ii); <u>accord</u> Rev. Rul. 81-95, 1981-1 C.B. 332. Organizations that qualify for a tax exemption under section 501(c)(4)—"501(c)(4) organizations"—are not required to disclose the names of their donors to the public. Compl. ¶ 22 (citing 26 U.S.C. § 6104(b), (d)(3)). The IRS regulation promulgated to implement section 501(c)(4) defines the term "operated exclusively for the promotion of social welfare" to apply to organizations that are

> <u>primarily engaged</u> in promoting in some way the common good and general welfare of the people of the community. An organization embraced within this section is one which is <u>operated primarily</u> for the purpose of bringing about civic betterments and social improvements.

Treas. Reg. § 1.501(c)(4)-1(a)(2)(i) (emphasis added). CREW alleges that, by defining "operated exclusively for the promotion of social welfare" in this manner, the regulation essentially substituted the word "primarily" for the statutory term "exclusively." Compl. ¶ 17. "Groups claiming § 501(c)(4) status have interpreted the 'primary activity' requirement to mean § 501(c)(4) organizations can spend up to 49 percent of their total expenditures in a tax year on campaign activities without such campaign activities constituting the 'primary' activity of the organization." <u>Id.</u> ¶ 21. CREW asserts that, "[o]n information and belief, the IRS is aware of

---

[1] Defs.' Mem. in Supp. of its Mot. to Dismiss for Lack of Jurisdiction [ECF No. 9-1] ("Defs.' Mot."); Pl.'s Opp'n to Defs.' Mot. [ECF No. 25] ("Pl.'s Opp'n"); Defs.' Reply to Pl.'s Opp'n [ECF No. 26] ("Defs.' Reply").

this interpretation," id., and IRS policy directives support this interpretation, id. ¶ 19; Rev. Rul. 81-95, 1981-1 C.B. 332 (stating that "an organization may carry on lawful political activities and remain exempt under section 501(c)(4) as long as it is primarily engaged in activities that promote social welfare"). As a result, organizations that are "primarily engaged" in social welfare can file under section 501(c)(4) and keep their donor information private, even if they are participating in political campaigns. Id. ¶¶ 19, 22.

CREW is a non-profit, non-partisan corporation organized under section 501(c)(3) of the Tax Code. Id. ¶ 5. "CREW is committed to protecting the rights of citizens to be informed about the activities of government officials, ensuring the integrity of government officials, and protecting the integrity of our political system against corruption." Id. "To advance its mission," CREW "disseminate[s] information to the public about public officials," with an emphasis on "examining and exposing special interests that have influenced our elections and elected officials." Id. ¶ 6. CREW contends that its efforts to fulfill its mission are hindered when individuals and entities can keep their identities private. Id. ¶¶ 7, 10. Because CREW does not have access to the donor information for 501(c)(4) organizations that participate in political campaigns, it "must spend time and money attempting to ascertain the source of the contributions through other means" that only provide "an extremely small fraction of the information." Id.

In 2011, two other non-profit, non-partisan organizations, Democracy 21 and the Campaign Legal Center,[2] petitioned the IRS to issue a new regulation that conforms to section 501(c)(4) of the Tax Code. Id. ¶ 28. "When the IRS failed to take any action to address the problems with its regulations," CREW filed its own rulemaking petition on April 9, 2013, that incorporated the 2011 petition by reference. Id. ¶ 31. CREW's petition detailed how various

---

[2] Democracy 21 and the Campaign Legal Center, as well as Congressman Chris Van Hollen and Public Citizen, Inc., were, at one time, consolidated plaintiffs in this case. They have since voluntarily dismissed their complaint. See Dec. 6, 2013 Notice of Voluntary Dismissal [ECF No. 23].

501(c)(4) organizations had spent millions of dollars in the 2012 election cycle. Id. ¶¶ 32-40. CREW asserts that because the organizations making these contributions filed under section 501(c)(4), they are not required to disclose their donor information, allegedly resulting in a "significant increase in the amount of 'dark' or anonymous money that is poured into ou[r] political system," id. ¶ 42, and hindering CREW's ability to "examin[e] and expos[e] the special interests that have influenced our elections and elected officials," id. ¶ 6.

On April 30, 2013, the IRS responded to CREW's petition for rulemaking, acknowledging the "public interest in the issue" and stating that it would "consider proposed changes in this area." Id. ¶ 43. CREW alleges that, to date, the IRS has neither acted on CREW's petition nor "take[n] any other steps to alter or amend" the disputed portion of the regulation, id. ¶ 47; Pl.'s Opp'n at 2, and that "[t]he IRS's refusal to act on [CREW's] petition for rulemaking effectively constitutes a denial of that petition," Compl. ¶ 48. On May 21, 2013, CREW brought this lawsuit against defendants, seeking a declaratory judgment, an injunction, and a writ of mandamus. Defendants have now filed a motion to dismiss, arguing that CREW lacks standing to bring this suit.

## STANDARD OF REVIEW

On a motion to dismiss for lack of jurisdiction, "the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). The Court need not, however, accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986); accord Trudeau v. FTC, 456 F.3d 178, 193 (D.C.

Cir. 2006). "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

The Constitution limits this Court's subject-matter jurisdiction to "Cases" and "Controversies" for which the plaintiff has standing to bring suit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006). "Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Defenders of Wildlife, 504 U.S. at 561. At minimum, the plaintiff, who bears the burden of establishing the elements of standing, "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." DaimlerChrysler, 547 U.S. at 342 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).

## DISCUSSION

"The irreducible constitutional minimum of standing" has three requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. Defenders of Wildlife, 504 U.S. at 560-61. Notably, "speculative claims dependent upon the actions of third parties do not create standing." Gettman v. DEA, 290 F.3d 430, 435 (D.C. Cir. 2002). And here, where "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily

5

'substantially more difficult' to establish." Defenders of Wildlife, 504 U.S. at 562 (quoting Allen, 468 U.S. at 758). CREW puts forth two arguments to support its constitutional standing. First, it asserts that it has standing based on informational injury because defendants' refusal[3] to engage in rulemaking regarding the disputed regulation has deprived CREW of donor information for 501(c)(4) organizations that participate in political campaigns. Second, CREW claims standing based on programmatic injury because defendants' refusal to engage in rulemaking regarding the disputed regulation has impeded CREW's organizational mission. Neither claim suffices to support standing.

I. STANDING BASED ON INFORMATIONAL INJURY

CREW alleges that, "[a]s a direct result of the challenged IRS regulation CREW seeks to change through its rulemaking petition, CREW has been denied information to which it is statutorily entitled." Pl.'s Opp'n at 3. Defendants challenge CREW's ability to satisfy all three requirements for constitutional standing based on its alleged informational injury.[4] They argue that CREW's alleged injury is not an injury-in-fact, but is hypothetical and speculative; that the alleged injury is not fairly traceable to the disputed IRS regulation, but instead to the independent decisions of third parties; and that the remedy CREW seeks would not redress its alleged injury. The Court will analyze these arguments in turn.

---

[3] As a general matter, CREW's allegation that defendants effectively "denied" its rulemaking petition by taking no action does not automatically confer Article III standing. See Fund Democracy, LLC v. SEC, 278 F.3d 21, 27 (D.C. Cir. 2002) ("Participation in agency proceedings is alone insufficient to satisfy judicial standing requirements."); Gettman, 290 F.3d at 433 ("The fact that Congress may have given all interested parties the right to petition the agency does not in turn 'automatic[ally]' confer Article III standing when that right is deprived."). The Court need not discuss this point in detail because CREW has clarified that it "is not basing its standing merely on the fact that it submitted a rulemaking petition." Pl.'s Opp'n at 21.

[4] Defendants also argue that CREW lacks prudential standing because its suit is not contemplated by the Tax Code. Because the Court determines that CREW lacks Article III standing to bring this suit, it will not reach the issue of prudential standing.

A. <u>Injury-in-fact</u>

An "injury-in-fact" sufficient to support standing is "an invasion of a legally protected interest" that is "concrete and particularized, and . . . actual or imminent, not conjectural or hypothetical." <u>Defenders of Wildlife</u>, 504 U.S. at 560. For a plaintiff to successfully claim standing based on an informational injury, he must allege that he is directly deprived of information that must be disclosed under a statute. <u>ASPCA v. Feld</u>, 659 F.3d 13, 23 (D.C. Cir. 2011) ("For purposes of informational standing, a plaintiff 'is injured-in-fact . . . because he did not get what the statute entitled him to receive.'") (quoting <u>Zivotofsky v. Sec'y of State</u>, 444 F.3d 614, 618 (D.C. Cir. 2006)); <u>accord</u> <u>Chiron Corp. v. NTSB</u>, 198 F.3d 935, 942 (D.C. Cir. 1999). Accordingly, a plaintiff "must espouse a view of the law under which the defendant (or the entity it regulates) is obligated to disclose certain information that the plaintiff has a right to obtain." <u>ASPCA</u>, 659 F.3d at 23. The focus of the Court's analysis here, then, is whether CREW has alleged the existence of any statute that directly entitles it to the information it seeks: donor information for 501(c)(4) organizations that participate in political campaigns. If not, CREW's alleged injury is of the "conjectural or hypothetical" type that is insufficient to support standing. <u>Defenders of Wildlife</u>, 504 U.S. at 560.

Defendants argue that CREW has failed to identify any law entitling it to the information it desires.[5] CREW responds that 26 U.S.C. § 527, which provides a tax exemption for political organizations and requires the disclosure of donor information for those organizations, entitles it to the information it seeks. CREW's asserted interpretation of the law, then, is as follows: if the IRS changed its regulation to conform to CREW's interpretation of section 501(c)(4) of the Tax

---

[5] Defendants initially contend that the Federal Election Campaign Act ("FECA"), 2 U.S.C. § 431 <u>et seq.</u>, and section 6104 of the Tax Code, 26 U.S.C § 6104, do not create a right to the information sought by CREW. CREW clarifies in its opposition, however, that it is not relying on either FECA or section 6104 as the "source of its right to donor information." Pl.'s Opp'n at 21 n.14.

7

Code's requirements, then organizations engaging in political campaign activities would no longer qualify for a 501(c)(4) tax exemption and, consequently, would file under section 527 and be required to disclose donor information. But the fatal flaw in CREW's interpretation, as defendants point out, is that nothing requires the organizations in question to file under section 527. Rather, if those organizations no longer qualified for a tax exemption under section 501(c)(4), they would become taxable entities that could make one of several choices: remain taxable[6]; file under some other tax-exemption provision that does not require disclosure (e.g., sections 501(c)(5) or (6), which permit "some political campaign activity," Defs.' Reply at 12 n. 5); file under section 527; cease political campaign activities; or cease operations altogether.

Despite this flaw in its theory of injury, CREW nonetheless attempts to analogize the facts here to those in FEC v. Akins, 524 U.S. 11 (1998). There, plaintiffs—a group of voters—suffered an informational injury because, under plaintiffs' interpretation of a Federal Election Campaign Act provision, the American Israel Public Affairs Committee was subject to certain disclosure rules. Id. at 15-16. Similarly here, CREW argues, it has "asserted a concrete injury flowing from its inability to access information [that] § 527 requires of tax-exempt groups engaged in political activities." Pl.'s Opp'n at 20. However, unlike the plaintiffs in Akins whose interpretation of the law required public disclosures from the American Israel Public Affairs Committee, CREW cites no law or interpretation of law that automatically and directly applies section 527's disclosure requirements to the 501(c)(4) organizations at issue. Instead, whether these organizations are subject to section 527's disclosure requirements depends on the future decisions of the organizations themselves, and such "speculative claims dependent upon the actions of third parties do not create standing." Gettman, 290 F.3d at 435; see also

---

[6] In support of the plausibility of this option, defendants indicate that 501(c)(4) organizations that engage in political campaign activities are already required to pay taxes on their expenditures for those activities. Defs.' Reply at 1 n. 1 (citing 26 U.S.C. § 527(f)(1) (subjecting 501(c)(4) organizations to income tax for campaign activities)).

DaimlerChrysler, 547 U.S. at 344 (finding an alleged injury to be hypothetical where it depends on the independent decisions of third parties).

The question whether these 501(c)(4) organizations even qualify to file under section 527 adds another layer of speculation to CREW's theory of injury. Section 527 applies <u>only</u> to political organizations, which are defined as organizations "primarily operated" for the purpose of participating in political campaigns. 26 U.S.C. § 527(e)(1)-(2). In contrast, groups that file under section 501(c)(4) must "primarily engage" in activities to promote "social welfare," which "does not include direct or indirect participation or intervention in political campaigns." Treas. Reg. § 1.501(c)(4)-1(a)(2)(i)-(ii). By regulatory definition, then, an organization that qualifies for a tax exemption under section 501(c)(4) should not qualify for a tax exemption under section 527, because it cannot be both "primarily engage[d]" and "primarily operated" in two mutually exclusive initiatives. Hence, CREW's theory of injury entails speculating not only that the affected organizations would elect to file under section 527, but also that they would choose to reorganize themselves to qualify to file under section 527. And although it is possible that some 501(c)(4) organization would make those choices, that possibility, which is based upon speculation about the independent decisions of third parties not before this Court, does not create a legal entitlement to the information CREW seeks. Hence, the necessary ingredient for informational injury-in-fact is missing.

In sum, CREW has failed to allege an injury-in-fact because it puts forth no statute or interpretation thereof that entitles it to the information sought. Accordingly, informational standing is not proper here, where "plaintiff's view of the statute would not directly entitle it to

the information it seeks."[7] ASPCA, 659 F.3d at 24. Although CREW has failed to allege an injury-in-fact, and thus lacks Article III standing, the Court will nonetheless analyze the other standing elements, which the parties have fully briefed.

B. Causal connection

For an alleged injury to support standing, it must be "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Defenders of Wildlife, 504 U.S. at 560 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)). Moreover, "a party seeking federal jurisdiction cannot rely on . . . speculative inferences . . . to connect his injury to the challenged actions of the defendant." DaimlerChrysler, 547 U.S. at 346 (internal quotation marks and citation omitted). Here, CREW argues that its inability to access donor information for 501(c)(4) organizations engaged in political campaign activities is directly traceable to defendants' alleged failure to reconcile the IRS regulation "with the Tax Code's requirement that 501(c)(4) groups be operated 'exclusively' for the promotion of social welfare." Pl.'s Opp'n at 24. In response to defendants' contention that CREW's claims are speculative, CREW states that "it is a certainty that many § 501(c)(4) groups engaging in significant political activities would seek to retain their tax-exempt status by establishing or affiliating with a tax-exempt group under § 527." Id. at 24-27 ("It is hardly a matter of speculation . . . that at least some of the tens of thousands of existing § 501(c)(4) organizations will establish or affiliate with political organizations under § 527(f) of the Tax Code if they are required to engage exclusively in the

---

[7] CREW also argues that its "standing to sue is further buttressed by the procedural harm it has suffered from the IRS's refusal to act on CREW's rulemaking petition." Pl.'s Opp'n at 21. To support this claim, CREW states that, "as a litigant to whom Congress has accorded a procedural right to protect [its] concrete interests[,] . . . here, the right to challenge agency action unlawfully withheld[,] . . . [CREW] can assert that right when it has suffered an injury in fact." Id. (internal quotations and citation omitted). As discussed above, however, CREW has not asserted an injury-in-fact because it has failed to identify a law or an interpretation thereof that entitles it to the information it seeks.

10

promotion of social welfare."). In other words, CREW insists, if not for the disputed IRS regulation, the organizations in question would have filed under section 527 and thus been required to disclose the donor information CREW seeks. This argument, however, does not move beyond speculation about "the independent action of some third party not before the court." Defenders of Wildlife, 504 U.S. at 560 (quoting Simon, 426 U.S. at 41-42). As discussed in the previous section, the organizations in question decide whether to file for an exemption under section 501(c)(4), section 527, some other provision, or not at all. And organizations currently filing under section 501(c)(4) would not even qualify to file under section 527 unless they changed the composition of their activities.

In Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26 (1917), indigent patients challenged the availability of a certain tax exemption to hospitals that refused to provide care to indigent patients at less than full cost. The asserted causal connection between the alleged injury—the denial of lower cost medical services—and the challenged tax exemption was insufficient to support standing because it depended on the independent decisions of hospitals whether to change their policies. Id. 40-46. Here, defendants argue that "[i]t would be similarly speculative to conclude that the actions of groups claiming exemption under section 501(c)(4) 'can be fairly traced' to the regulation at issue here, rather than to these groups' own independent choices." Defs.' Mot. at 13-14.

CREW attempts to differentiate the facts of this case from those in Simon, arguing that there is less uncertainty here because "virtually all § 501(c)(4) organizations are dependent on the special tax benefits they derive from § 501(c)(4)," which, "in turn, provides a comfortable level of certainty [that] most, or at least many, of these groups would not forego favorable tax treatment in order to participate in the political process." Pl.'s Opp'n at 28. However, even if we

11

assume that the affected organizations are primarily concerned about tax treatment, it remains plausible that they would elect to file under another tax-exemption provision instead of section 527. Moreover, the primary concern of many of these organizations may be to maintain the privacy of their donor information rather than benefit from favorable tax treatment, and since these organizations are already subject to income tax on their political campaign activities, see 26 U.S.C. § 527(f)(1), it is plausible that many of these groups would choose to proceed as taxable entities if they did not qualify to file under section 501(c)(4).

In addition to the decisionmaking required of the 501(c)(4) organizations at issue, the organizations' donors may also play an important decisionmaking role. If an organization that participates in political campaigns no longer had the option to file under section 501(c)(4), its donors who wished to remain anonymous could pressure the organization to maintain a filing status that permits donor privacy and, failing that, could choose to redirect their contributions to an organization that is not subject to donor disclosure requirements. To support CREW's theory of causation, then, we must speculate not only about the choices of the affected organization, but also about how those choices may affect their donor's choices and vice versa. These layers of assumptions make CREW's causation theory especially speculative. Indeed, "[t]he greater the number of uncertain links in a causal chain, the less likely it is that the entire chain will hold true." Florida Audubon Soc. v. Bentsen, 94 F.3d 658, 670 (D.C. Cir. 1996).

CREW endeavors to bolster its causation theory by proffering examples of section 501(c)(3) organizations that have established related organizations under sections 501(c)(4) and 527 to engage in political campaigns, as well as examples of 501(c)(4) organizations that "associate[] with" 527 organizations to participate in political campaigns. Pl.'s Opp'n at 25. These examples, however, do not obviate the speculation inherent in CREW's theory of

causation. CREW also provides an example of a 501(c)(4) organization that chose to file under section 527 after its 501(c)(4) status was revoked, which is more relevant, but that single example still fails to show that CREW's alleged injury is "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Defenders of Wildlife, 504 U.S. at 560 (quoting Simon, 426 U.S. at 41-42); see also Allen, 468 U.S. at 759 (finding a chain of causation too weak to support standing because it involved the independent decisions of third parties). Accordingly, CREW has not sufficiently shown the causation needed to support standing.

### C. Redressability

To meet the last element of standing, it must be "likely," as opposed to "merely speculative," that the alleged injury—here, CREW's inability to access donor information for certain 501(c)(4) organizations—will be "redressed by a favorable decision." Defenders of Wildlife, 504 U.S. at 560-61. Redressability "examines the causal connection between the alleged injury and the judicial relief requested." Allen, 468 U.S. at 753 n. 19. "[T]he relief CREW seeks . . . [is] that the IRS be compelled to 'initiate a rulemaking procedure to harmonize the IRS regulations with the clear and unambiguous statutory language.'"[8] Pl.'s Opp'n at 30 (citing Compl., Prayer for Relief ¶ 3). CREW contends that "the right to a rulemaking proceeding addressing the conflict between the IRS's current regulations governing § 501(c)(4) organizations and the Tax Code" will "make it a possibility—and CREW submits a near certainty—any reasoned rulemaking procedure will result in the IRS reconsidering its regulations." Id. Still, because CREW's alleged injury is not directly connected to the regulation

---

[8] In addition to a writ of mandamus to compel defendants to initiate a rulemaking procedure, CREW has also requested declaratory and injunctive relief. CREW, however, bases its argument for standing solely on mandamus relief. See Opp'n at 30. Nonetheless, giving CREW every favorable inference, declaratory and injunctive relief would not remedy CREW's alleged injury for the same reason that mandamus relief would not: remedying CREW's injury is contingent on the independent decisions of third parties.

at issue, but rather to the independent decisions of third parties, the relief requested is not itself "likely" to remedy CREW's alleged harm. Compare Defenders of Wildlife, 504 U.S. at 568 (finding no redressability where the requested court order would not bind the decisions of third party actors necessary to the requested relief); DaimlerChrysler, 547 U.S. at 350 (finding no redressability where the requested injunction would not remedy the alleged injury without the independent actions of a state government); and Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 939 (D.C. Cir. 2004) (finding no redressability where the requested invalidation of a challenged policy would not remedy the alleged injury without the independent decisions of educational institutions) with Neighborhood Assistance Corp. of America v. CFPB, 907 F. Supp. 2d 112, 123 (D.D.C. 2012) (finding redressability where requested relief would not give discretion to third party decisionmakers).

CREW asserts that it is subject to a "more relaxed" standard of redressability because it is requesting procedural relief. Pl.'s Opp'n at 29 (claiming that CREW "has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant") (citing Massachusetts v. EPA, 549 U.S. 497, 518 (2007)). Here, however, even if the IRS implemented CREW's requested modification to the disputed regulation, the organizations in question could still choose to file for a tax exemption under another subsection of 501 that does not require donor disclosure or choose not to file at all, and donors who wish to remain anonymous could choose to donate only to organizations that do not disclose donor information. Even under CREW's "more relaxed" standard, then, it is not any more "likely," as opposed to "merely speculative," that a favorable decision by the IRS would remedy CREW's alleged injury. Defenders of Wildlife, 504 U.S. at 560-61. Hence, CREW fails to demonstrate redressability to support standing.

## II. STANDING BASED ON PROGRAMMATIC INJURY

CREW alleges that it suffered an "additional injury" when the IRS "refus[ed] to grant its rulemaking petition" because that action "impeded CREW in carrying out its core activities." Pl.'s Opp'n at 22.[9] A plaintiff organization may establish standing if it can show that the defendant's actions cause a "concrete and demonstrable injury to the organization's activities" that is "more than simply a setback to the organization's abstract social interests." Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982) (finding that a plaintiff organization had an injury-in-fact where "racial steering" practices "perceptibly impaired" the organization's ability "to provide counseling and referral services for low- and moderate-income homeseekers"). Specifically, the "organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." Nat'l Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (internal quotation marks and citation omitted). Hence, programmatic injury arises only from "a direct conflict between the defendants' conduct and the organization's mission." Nat'l Treas. Emps. Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996).

Here, CREW has not suffered a programmatic injury because the challenged conduct—defendants' refusal to engage in rulemaking—is not in direct conflict with CREW's organizational mission to "examin[e] and expos[e] special interests that have influenced our elections and elected officials," Compl. ¶ 6. CREW asserts that defendants' refusal to initiate rulemaking impeded CREW's organizational activities because it "made it more difficult and frequently impossible" for CREW to access the donor information it desires. But as discussed earlier, CREW's inability to access that donor information is not fairly traceable to defendants'

---

[9] Although CREW does not frame this "additional injury" as a separate standing argument, the Court must give CREW every favorable inference and thus will analyze this claim as another possible ground for standing. See Sparrow, 216 F.3d at 1113.

refusal to engage in rulemaking. Accordingly, that refusal is not in direct conflict with CREW's organizational mission. And CREW's alleged programmatic injury is similarly not fairly traceable to defendants' refusal to initiate rulemaking, and not redressable by the relief requested. Hence, CREW also fails to establish standing based on programmatic injury.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss will be granted. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: February 27, 2014